UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
BARI KLEIN,

                            Plaintiff,

-against-

LITCHFIELD CAVO LLP, and
LOUIS ECKERT, *Individually*,

                            Defendants.
-----------------------------------------------------------------X

Case No.: _____

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

RECEIVED MAY 11 2015 U.S.D.C. S.D.N.Y. CASHIERS

      Plaintiff, Bari Klein, by her attorney, Jesse C. Rose, Esq. of The Rose Law Group PLLC, hereby brings this action against the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), the New York City Human Rights Law, New York City Administrative Code § 8-502(a), *et. seq.* ("NYCHRL") and the Family medical Leave Act, as codified, 29 U.S.C. § 2601 *et. seq.* ("FMLA"), and seeks damages to redress the injuries she suffered as a result of being **sexually harassed**, **discriminated against**, and **retaliated against** by her employer and supervisor.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state

law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) based upon Defendants' principal place of business within the Southern District of New York.

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated April 30, 2015, with respect to the herein charges of discrimination.

7. This Action is being commenced within 90 days of receipt of said Right to Sue.

## PARTIES

8. That at all times relevant hereto, Plaintiff Bari Klein ("Klein") was a resident of the State of New York and the County of Queens.

9. That at all times relevant hereto, Defendant Litchfield Cavo LLP ("LC") was a Foreign Registered Limited Liability Partnership duly existing pursuant to, and by virtue of, the laws of the State of Illinois, with its principal place of business located at 303 West Madison St, Ste 300, Chicago, Illinois, 60606 and maintains an office registered with the New York Department of State for service of process at 111 Eighth Avenue, New York, New York 10011.

10. That at all times relevant hereto, Plaintiff Klein was an employee of Defendant LC.

11. That at all times relevant hereto, upon information and belief, Defendant Louis Eckert ("Eckert") was a resident of the State of New York.

12. That at all times relevant hereto, Defendant Eckert was an employee of Defendant LC, holding the position of "Capital Partner."

13. That at all times relevant hereto, Defendant Eckert was Plaintiff Klein's supervisor and had supervisory authority over Plaintiff Klein.

14. Defendant LC and Defendant Eckert are collectively referred to herein as "Defendants."

## MATERIAL FACTS

15. On or about September 3, 2013, Plaintiff Klein started employment with Defendant LC in the position of Associate.

16. Immediately upon the start of her employment, Plaintiff Klein was subjected to discriminatory and harassing treatment on account of her gender.

17. On the first day of employment, Plaintiff Klein went to lunch with Defendant Eckert, her supervisor, and Chris Sommer who also supervised her work. During that lunch, Defendant Eckert told Plaintiff Klein not to speak with a female coworker because he claimed she was a "bitch with a loud mouth and a slut." He also claimed he wanted to get her fired but had decided against it.

18. At another time during her employment, Defendant Eckert told Plaintiff Klein that the same female coworker was a "slut" and was having an affair with an attorney within the firm. He indicated that he had told that attorney that he "should bang that piece of ass." Defendant Eckert further stated the same female co-worker was likely sleeping with one of the partners at Defendant LC and that was the only reason she still had a job was to prevent her from suing them.

19. During that same lunch, Defendant Eckert asked if Plaintiff Klein was then living in her parents' home, which she was while she was relocating. Defendant Eckert then inappropriately asked "how does it feel having sex in your parents' home?" Plaintiff Klein simply stated that they did not have sex and hoped the conversation would end,

however, Defendant Eckert continued by stating "Come on, it must feel weird to have sex in your parents' home." He then indicated that he and his wife "have sex all the time" and that he "could not imagine not having sex." Plaintiff Klein told Defendant Eckert that this was "too much information" and ended the conversation.

20. Between that day and around January 23, 2014, Defendant Eckert, Plaintiff Klein and Mr. Sommer regularly had lunch together. While each day the conversation would begin relating to work, Defendant Eckert would inevitably bring the conversation to relate to Plaintiff Klein's personal life. Those conversations included questions about how often Plaintiff Klein had sex with her husband, how it felt to have sex in her parents' home, why Plaintiff Klein did not have sex more often and asking if Plaintiff Klein would ever cheat on her husband.

21. On one occasion, Mr. Sommer told Plaintiff Klein that the comments Defendant Eckert made were "the most inappropriate things [he] has ever heard" and indicated that he had told Defendant Eckert that he should stop discussing Plaintiff Klein's sex life.

22. At these lunches Defendant Eckert would frequently discuss the sex lives of other lawyers and describe visits to strip clubs. Plaintiff Klein would tell Defendant Eckert that she did not care to talk about her sex life, his sex life or any other individuals' sex lives. When Defendant Eckert asked Plaintiff Klein if she had ever been to a strip club, she simply responded "no" and changed the topic.

23. Frequently, Defendant Eckert would drink during these lunches and insist that Plaintiff Klein and Mr. Sommer also drink. After drinking, Defendant Eckert's conduct became worse, often commenting that Plaintiff Klein should "satisfy" her husband and "treat him better" referring to sex. He would also tell Plaintiff Klein that she had to "be in the office

more." This was somewhat odd because Plaintiff Klein regularly billed more hours than her counterparts and spent very little of the waking hours away from her office except when she was attending depositions and appearances in court.

24. In or around early October of 2013, Plaintiff Klein told Defendant Eckert that she had a potential client who she would like to sign up. Defendant Eckert responded "you're a woman and an associate, no one in the firm will take you seriously or respond. I will send the email out." This was belittling and indicative of Defendant Eckert's views of women in the workplace.

25. On one occasion, on or about October 9, 2013, Defendant Eckert was out with Plaintiff Klein and two coworkers. Plaintiff Klein asked why she had been cc'd on an email with a managing partner. Defendant Eckert responded that if Plaintiff Klein did not like it then she was fired. Defendant Eckert also stated that Plaintiff Klein was "mean" to her husband. When Plaintiff Klein left the restaurant crying he followed her out and told her that she was not fired and that she needed to treat her husband better, indicating a sexual undertone.

26. On or about that same night, Defendant Eckert emailed Mr. Sommer and stated "My brother, from now going forward, Bari Klein Shinbaum reports to you directly. Bari is pleased. I am drunk."

27. In or around December of 2013, Defendant Eckert saw that Plaintiff was wearing a lace shirt under a sweater. He immediately asked "are you wearing your lingerie to work?" Plaintiff Klein was mortified by this comment and walked away embarrassed. Plaintiff Klein never wore that shirt to work again.

28. Defendant Eckert told Plaintiff Klein's husband that he had been arrested for drunk

driving. Plaintiff Klein told him that she would defend him if he ever needed a criminal lawyer in the future. Defendant Eckert responded very aggressively: "I would never hire you, you do not know what you're doing, you are a woman." Defendant Eckert also discussed Plaintiff Klein's sex life with her husband and said "I feel your pain, I don't know how you are married to Bari."

29. In January of 2014, Defendant Eckert accused Plaintiff Klein of not completing a report in a timely fashion, which had been due in December. The report was not untimely based on the client's guidelines. Plaintiff Klein had prepared it on time but had inadvertently not been uploaded to the firm's database. When Plaintiff Klein uploaded the document to the correct folder on Defendant LC's network in January of 2014, Defendant Eckert baselessly accused Plaintiff Klein of lying about when it was created and berated her for over an hour in his office. Plaintiff Klein hired a computer expert to prove that she was not lying. Defendant Eckert insulted and degraded her based on the false accusation contributing to a hostile work environment.

30. Despite the accusations that Plaintiff Klein had not created the document in a timely fashion being false, Plaintiff Klein approached Defendant Eckert in his office and apologized for not having uploaded the document in December. He responded that Plaintiff Klein's opinion does not matter and if she did not like it then get out of his office. Plaintiff Klein began crying. Defendant Eckert commented on the weakness of women and told her to leave if she was crying.

31. After this meeting, Plaintiff Klein complained to Mr. Sommer stating that Defendant Eckert "bullied women" and that she felt she was being treated differently than other employees. Nothing was done as a result of this complaint.

32. On one occasion, Plaintiff Klein negotiated a settlement in a defense case and reported this to Defendant Eckert. He immediately informed Plaintiff Klein that he was better than her and would negotiate the settlement. He promptly agreed to a settlement, which was $10,000.00 higher than that which Plaintiff Klein negotiated.

33. In March of 2014, Defendant Eckert told Plaintiff Klein that a response she wrote was illiterate and accused her of drinking. This email was baseless and Plaintiff Klein's email was perfectly understandable. This was another means of harassing Plaintiff Klein.

34. Defendant Eckert would frequently criticize Plaintiff Klein's work without any basis. In May of 2014, Plaintiff Klein submitted a report for an insurance carrier which Defendant Eckert criticized without basis. Mr. Sommer was then asked to work with Plaintiff Klein to prepare the report. When she submitted the same report to Mr. Sommer, he resubmitted it to Defendant Eckert who accepted it without hesitation or criticism.

35. Throughout her employment from the beginning until her termination, Plaintiff Klein frequently would tell Mr. Sommer and other partners within Defendant LC than she believed she was being treated differently because of her gender. She stated that she believed much of the criticism directed at her was directly connected to her gender.

36. Despite these complaints nothing was done to address the situation.

37. In or around June of 2014, Defendant Eckert commented that an adjuster was "dumb" because she was a "woman and women know nothing and she only got where she is because of who she knows."

38. Defendant Eckert, after Plaintiff Klein repeatedly rejected and avoided conversations relating to their sex lives, began retaliating against Plaintiff Klein by undermining her work.

39. On or about August 12, 2014, Plaintiff Klein received an email from Defendant Eckert stating that she "could deny till I die" referring to statements she had made. Plaintiff Klein then went directly to Mr. Christopher McLaughlin's office where she complained in detail about how Defendant Eckert treated her in the workplace. Mr. McLaughlin responded to this complaint by saying that he "won't say anything, but one of three things can happen should you bring this to the attention of the management committee. 1. You could lose your job; 2. Lou could lose his job or 3. The NY Partners could give you work and weed you from having to work with Lou." Plaintiff Klein was appalled that she was being told she could lose her job for complaining about discrimination and informed Mr. McLaughlin of this. He responded by pointing out that Defendant Eckert brings in millions of dollars for the firm.

40. Following that meeting, Plaintiff Klein sent Defendant Eckert an email asking him to stop harassing her. Defendant Eckert responded by removing all assignments he had given her and removing her ability to perform her job.

41. Due to the harassment and hostility which Plaintiff Klein endured, she suffered a severe panic attack which resulted in a trip to the emergency room. Despite this occurring within Defendant LC's office, not one employee even had the courtesy to call an ambulance for Plaintiff Klein. Ultimately, Plaintiff Klein's mother called the office and demanded to speak with the managing partner of Defendant LC's office, Vince Velardo. Plaintiff Klein's mother informed him that she was keeping a record of the harassment since the beginning and that he had to immediately call an ambulance.

42. Ultimately Plaintiff Klein was taken out of the office on a stretcher and taken to the hospital.

43. In or around this time, Plaintiff Klein sent an email to Defendant LC's named partners: Richard Cavo and Daniel Litchfield. In that email, Plaintiff Klein complained about the harassment she endured from Defendant Eckert.

44. Plaintiff Klein had a conversation with Kierney Kilens from Defendant LC's human resources department on the same day that she suffered a panic attack due to Defendant Eckert's harassment. Ms. Kilens told Plaintiff Klein that she would come to New York to discuss what had happened. She also told Plaintiff Klein that she would not be terminated and that she "worked for Litchfield Cavo, not Lou Eckert." She also said that Plaintiff Klein was a "solid employee who has had a lot of great accomplishments for this office."

45. On or about August 16, 2014 through August 23, 2014, Plaintiff Klein was on vacation. Upon her return, she was not given any substantive assignments which prevented her from performing the necessary job functions required of her.

46. On or about August 23, 2014, because of the ongoing harassment and retaliation, Plaintiff Klein had a telephone conference with Alan Becker, a Managing Partner for Defendant LC. During that meeting Plaintiff Klein complained that Defendant Eckert had harassed her, abused her and belittled her. Mr. Becker chastised Plaintiff Klein for emailing Mr. Cavo and Mr. Litchfield and told Plaintiff Klein "you will never contact Daniel Litchfield or Rick Cavo ever again for any reason."

47. Mr. Becker referred to Plaintiff Klein's discrimination complaint as a "personality conflict" which he would correct by having her no longer report to Defendant Eckert. He also told Plaintiff Klein that she would receive assignments from four (4) partners, however, only two (2) of those four (4) would speak with her.

48. After this call, Plaintiff Klein continued to not receive any substantive assignments from

other attorneys. Further, nothing was done to investigate or otherwise deter the harassment and retaliation Plaintiff Klein endured during her employment.

49. Between August 23, 2014 and September 5, 2014, Plaintiff Klein received very few assignments and her employment was jeopardized due to her inability to perform billable work. When Plaintiff Klein contacted Ms. Kearney in human resources, she stated that it was Plaintiff Klein's responsibility to go get work. No other associate in the New York firm was responsible to request work from partners, as such Plaintiff Klein was being treated differently by both the New York partners and human resources because of her complaint of discrimination.

50. On the recommendation of a doctor and due to a disability with which Plaintiff Klein was subsequently diagnosed, she requested and was granted a leave of absence from September 5, 2014 until November 3, 2014. This leave was necessary under the Family Medical Leave Act for a serious medical condition and was a reasonable accommodation for Plaintiff Klein's mental disability which was caused by Defendants. Plaintiff Klein reluctantly went out on this leave of absence.

51. Upon her return to work, she was again given very few assignments and not treated fairly.

52. On November 8, 2014, Defendant LC terminated Plaintiff Klein's employment in direct retaliation for her complaints of discrimination, leave of absence taken under the FMLA and request for reasonable accommodation.

53. Throughout her employment with Defendants, Defendant Eckert's actions were unsolicited, unwelcome and offensive.

54. Defendants' actions and conduct were intentional and intended to harm Plaintiff Klein.

55. Defendant Eckert, who was Plaintiff Klein's supervisor, regularly exposed Plaintiff Klein

to a sexually offensive and hostile work environment which permeated the workplace and was severe in nature.

56. Plaintiff Klein has been unlawfully discriminated against, sexually harassed, retaliated against, humiliated, degraded and belittled, and as a result, suffers loss of rights, emotional distress, loss of income, and earnings.

57. Plaintiff Klein's performance was, upon information and belief, above average during the course of her employment with Defendants.

58. As a result of Defendants' actions, Plaintiff Klein feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

59. As a result of the Defendants' discriminatory and intolerable treatment of Plaintiff Klein, she has suffered severe emotional distress and physical ailments.

60. As a result of the acts and conduct complained of herein, Plaintiff Klein has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails, and Plaintiff Klein has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

61. As a result of the above, Plaintiff Klein has been damaged in an amount which exceeds the jurisdiction limits of the Court.

62. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff Klein demands Punitive Damages as against both Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendant)

63. Plaintiff Klein repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

64. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq.*, for relief based upon the unlawful employment practices of the above-named Defendant LC.

65. Plaintiff Klein complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender (<u>sexual harassment</u>).

66. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by discriminating against Plaintiff Klein because of her gender (<u>female</u>).

## AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER TITLE VII (Not Against Individual Defendant)

67. Plaintiff Klein repeats and realleges each and every allegation made in the above paragraphs of this complaint.

68. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

   a. "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

69. Defendant LC engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.* by discriminating against Plaintiff Klein with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

70. Plaintiff Klein repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

71. The Administrative Code of City of NY § 8-107 [1] provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

72. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff Klein because of her gender (female).

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

73. Plaintiff Klein repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

74. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

75. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and

coercing the above discriminatory, unlawful and retaliatory conduct.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

76. Plaintiff Klein repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

77. New York City Administrative Code Title 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

78. Defendants violated the section cited herein as set forth.

### AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

79. Plaintiff Klein repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

80. New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.
    a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
    b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

1. the employee or agent exercised managerial or supervisory responsibility; or

2. the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

3. the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

81. Defendants violated the section cited herein as set forth.

### AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

82. Plaintiff Klein repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

83. The New York City Administrative Code Title 8, §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person

because such person has opposed any practices forbidden under this chapter. . ."

84. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(7) by discriminating against Plaintiff Klein because of Plaintiff Klein's opposition to the unlawful employment practices of her employer.

## AS AN EIGHTH CAUSE OF ACTION
## RETALIATION & INTERFERENCE UNDER THE FAMILY AND MEDICAL LEAVE ACT
### (Not Against the Individual Defendant)

85. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

86. § 2615 of the Act states as follows:

   a. Interference with rights

      (1) Exercise of rights

      It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

      (2) Discrimination

      It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

87. Defendant LC discriminated against Plaintiff and discharged Plaintiff from her employment for exercising her rights under the FMLA.

## AS A NINTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE AMERICANS WITH DISABILITIES ACT
### (Not Against the Individual Defendant)

88. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

89. Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

90. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

91. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disability.

92. Plaintiff was discriminated against and retaliated against after requesting leave as a reasonable accommodation for her disability.

93. Defendant LC violated the ADA by terminating Plaintiff.

## JURY DEMAND

94. Plaintiff Klein demands a trial by jury.

**WHEREFORE**, Plaintiff Klein respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et. seq.*; the Family medical Leave Act, as codified, 29 U.S.C. § 2601 *et. seq.*; the Americans with Disabilities Act of 1990, and the New York City Administrative Code §8-107 *et. seq.*, in that Defendants sexually harassed, discriminated against, and retaliated against Plaintiff Klein on the basis of her gender, disability, request for accommodation, and FMLA leave;

B. Awarding damages to Plaintiff Klein for all lost wages and benefits resulting from Defendants' unlawful discrimination and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff Klein compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff Klein punitive damages;

E. Awarding Plaintiff Klein attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff Klein such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: Astoria, New York
      May 11, 2015

By: _____
Jesse Rose, Esq.
*Attorney for Plaintiff*
31-09 Newtown Avenue
Suite 309
Astoria, New York 11102
(718) 989-1864
jrose@theroselawgroup.com